DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Lapos Construction, Inc. has appealed from the judgment of the Lorain County Court of Common Pleas which granted summary judgment in favor of Defendant-Appellee Florence Leslie on Appellant's claims. This Court affirms.
 I {¶ 2} In mid-2003, Appellee was approached by Mike Lapos, the president of Appellant. At that time, Lapos expressed his intention to acquire Appellee's property. On July 21, 2003, the parties entered into a real estate option contract. Appellant paid Appellee $2,000 and Appellee held the property for Appellant. On December 19, 2003, the parties entered into a second option contract, extending the period that Appellee would hold the property. On April 15, 2004, Appellant exercised its option and purchased the property.
 {¶ 3} During its excavation of the property, Appellant discovered an underground gas well that serviced the property. Appellant then paid to have the well removed because it was not feasible for the well to remain on the property. In addition, after exercising its option, but prior to closing, Appellant discovered that the City of Amherst would not pay to have a roadway on the property removed. As such, Appellant was required to remove the roadway at its own expense of $7,900.
 {¶ 4} On November 22, 2004, Appellant filed suit against Appellee. In its complaint, Appellant asserted that Appellee had fraudulently failed to disclose the existence of the gas well, despite her knowledge of its existence. In addition, Appellant alleged that Appellee had fraudulently misrepresented that she had a written contract in which the City agreed to pay for the cost of the removal of the roadway. Appellant asserted that it relied upon and was damaged by Appellee's nondisclosure and misrepresentation.
 {¶ 5} On November 16, 2005, Appellee moved for summary judgment on both of Appellant's claims. Appellant responded in opposition on December 2, 2005. On January 13, 2006, the trial court granted Appellee's motion, entering judgment in her favor on both of Appellant's claims. Appellant has timely appealed the trial court's judgment, raising one assignment of error for review.
 II Assignment of Error
"THE TRIAL COURT ERRED WHEN IT RULED THAT THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND THAT APPELLEE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW WHEN IT GRANTED THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT[.]"
 {¶ 6} In its sole assignment of error, Appellant has asserted that the trial court erred in granting summary judgment. Specifically, Appellant has argued that genuine issues of material fact exist regarding both of its claims. We disagree.
 {¶ 7} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 8} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.
 {¶ 9} Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Id. See, also, Henklev. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 10} Pursuant to Civ.R. 56(C):
"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
Based upon the foregoing standard of review, we examine the evidence presented and each of Appellant's claims.
 {¶ 11} In her motion for summary judgment, Appellee relied upon her own affidavit, the parties' written agreements, and Appellant's responses to interrogatories. In turn, Appellant relied upon the affidavits of Mike Lapos and Mark Yeager, a surveyor hired by Appellant, its responses to interrogatories, and the parties' written agreements.
 {¶ 12} In its first cause of action, Appellant asserted that Appellee failed to disclose a latent defect in the property. Specifically, Appellant alleged that an uncapped gas well was located on the property, that Appellee knew of its existence, and that Appellee failed to inform Appellant of the existence of the well. In its second cause of action, Appellant alleged that Appellee represented that an existing driveway would be removed at the expense of the city. Appellant asserted that Appellee knew such a representation was false. Without supporting rationale, the trial court granted summary judgment in Appellee's favor on both of Appellant's causes of action.
 Caveat Emptor {¶ 13} In an action by a buyer of real property against the seller of the property, the doctrine of caveat emptor prevents the buyer's recovery for structural defects in the real property when "(1) the defect [is] open to observation or discoverable on reasonable inspection, (2) the purchaser [had] an unimpeded opportunity to examine the property and (3) the vendor [has] not engage[d] in fraud." Layman v. Binns (1988), 35 Ohio St.3d 176,177. In addition, a buyer of real property has "no just cause for complaint even though there are misstatements and misrepresentations by the [seller] not so reprehensible in nature as to constitute fraud." Traverse v. Long (1956),165 Ohio St. 249, 252. However, a vendor does have a duty "to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection."Layman, 35 Ohio St.3d at 178.
 {¶ 14} The doctrine of caveat emptor is nullified by a fraudulent misrepresentation or fraudulent failure to disclose.Dito v. Wozniak, 9th Dist. No. 04CA008499, 2005-Ohio-7, at ¶13. This Court, therefore, must determine if the trial court properly concluded that Appellee did not commit fraudulent nondisclosure regarding the existence of the gas well on the property or fraudulent misrepresentation regarding the removal of the roadway.
 {¶ 15} Generally, to sustain an action for fraud against Appellee, Appellant must establish all of the following:
"1) a representation, or in a situation where there was a duty to disclose, a concealment of fact; 2) which fact is material to the transaction; 3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; 4) with the intent of misleading another into relying upon it; 5) justifiable reliance on the misrepresentation; and 6) a resulting injury proximately caused by the reliance." Garvey v. Clevidence, 9th Dist. No. 22143, 2004-Ohio-6536, ¶ 12, citing Buchanan v. GenevaChervenic Realty (1996), 115 Ohio App.3d 250, 257.
 Fraudulent Nondisclosure {¶ 16} In its claim for fraudulent nondisclosure, Appellant has argued that the gas well was a latent defect and that Appellee, therefore, had a duty to disclose its existence. Appellant continues, arguing that it relied upon Appellee's nondisclosure and was injured as a result. We find that Appellant's argument lacks merit.
 {¶ 17} Appellant has argued that since the well was buried under the property, reasonable inspection would not have revealed its existence. Appellant, however, ignores the facts it had in its possession. Appellee testified during her deposition that her home was heated in part by gas. Appellee testified as follows:
"Q. * * * Were there any type of valves in your house that you can shut off the well or turn it back on?
"A. There was a gauge coming up that you could tell what the pressure was * * * [o]ut in the laundry room.
"* * *
"Q. Okay. Was there anything hiding this gauge or was there anything around?
"A. No."
In an attempt to avoid the application of caveat emptor, Appellant has asserted that its inspections did not reveal a gas well. Further, Appellant has argued that Appellee's home was in-part heated by an electric baseboard. These arguments, however, do not create a genuine issue of material fact. Rather, they support the application of the doctrine of caveat emptor.
 {¶ 18} It is an undisputed fact that the gas gauge in Appellee's house was in plain sight. Furthermore, it is undisputed that Appellant contacted the local gas supplier and learned that the supplier did not list Appellee as a customer. As such, at that time, a reasonable purchaser would have been placed on notice that in some manner the home was being supplied with natural gas. Therefore, Appellant had sufficient information before it to be placed on notice that a gas well was on the property. Furthermore, as there was no superstructure on the surface of the land, the reasonably available facts demonstrated that the well must have been below the surface of the property. Accordingly, this Court finds that a reasonable inspection, utilizing the above known facts, would have revealed the existence of a well. Caveat emptor, therefore, serves to defeat Appellant's claim of fraudulent nondisclosure. Succinctly stated, Appellant cannot use its failure to utilize those facts which were reasonably available to it when conducting its inspections to avoid the application of caveat emptor.
 Fraudulent Misrepresentation {¶ 19} In its second claim, Appellant asserted in the trial court that Appellee represented that she had a written contract with the City of Amherst. Appellant alleged that Appellee had informed it that the City would remove a roadway from the property at the City's cost. Appellant's second claim lacks merit.
 {¶ 20} Assuming arguendo that Appellee misrepresented the existence of a written contract, a fact which she denies, Appellant's claim still must fail. Initially, we note that there is no evidence, nor even an allegation, that Appellee ever gave details of the alleged written contract. Assuming that Appellee represented that the contract obligated the City to replace the roadway, we find that Appellant's reliance upon any such statement was not justified. By assuming that Appellee misrepresented the existence of a contract, this Court removes any genuine issue of material fact surrounding the existence of that representation. Accordingly, the fact that Appellant and Appellee differ over whether Appellee represented that a contract was in place does not preclude summary judgment.
 {¶ 21} To determine whether Appellant's reliance on Appellee's representation was justifiable, this Court must inquire into the relationship between the parties. CrownProperty Dev., Inc. v. Omega Oil Co. (1996),113 Ohio App.3d 647, 657. Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances. Lepera v. Fuson (1992), 83 Ohio App.3d 17, 26. However, reliance and responsibility must be balanced:
"The rule of law is one of policy and its purpose is, while suppressing fraud on the one hand, not to encourage negligence and inattention to one's own interests. There would seem to be no doubt that while in ordinary business transactions, individuals are expected to exercise reasonable prudence and not to rely upon others with whom they deal to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple-minded or unwary." (Citations omitted.) Amerifirst Savings Bank of Xenia v. Krug
(1999), 136 Ohio App.3d 468, 495-96, quoting 50 Ohio Jurisprudence 3d (1984), Fraud and Deceit, Section 132.
Furthermore, in Field v. Mans (1995), 516 U.S. 59, the U.S. Supreme Court held as follows:
"Although the plaintiff's reliance on the misrepresentation must be justifiable * * * this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. at 70-71.
Under these guidelines, we find that Appellant's reliance was not justifiable.
 {¶ 22} First, assuming that a contract did exist, there is no evidence to suggest that the contract would inure to the benefit of a subsequent purchaser, nor is there any evidence that Appellant inquired about the possibility of receiving such a benefit. Rather, Appellant assumed that the City's alleged promise to Appellee ran with the land and that it would receive the benefit of that promise. Appellant never inquired about the terms of the contract, including even inquiring about the date the City's promise would be fulfilled. Furthermore, Appellant admittedly attended numerous City Council meetings prior to finalizing its contract with Appellee. During these meetings, Appellant never inquired about this alleged contract. It was not until after Appellant entered into a binding agreement with Appellee that it investigated her claim at all. We note as well that the binding agreement contained the following provision:
"This Agreement represents the entire agreement of the parties hereto with respect to the subject matter hereof."
As Appellant drafted this provision, we find it disingenuous that Appellant now seeks to avoid its application and incorporate other promises into the parties' agreement.
 {¶ 23} Furthermore, Appellant is engaged in the construction industry, including the building of residential developments. Appellant undoubtedly has conducted business with city councils, as it did here. Appellant, therefore, undoubtedly has experience with easements and the terms and conditions which accompany them. In contrast, Appellee is a widow in her mid-eighties. Throughout her deposition testimony, Appellee indicated that she believed that the City was going to pay to remove the roadway. She noted that the "neighbors" all believed that the City would pay to have the roadway removed because it "owed" it to Appellee. As her deposition makes clear, Appellee was not a sophisticated seller attempting to defraud a construction company. Rather, the record reveals that Appellee was unsophisticated with regard to real estate transactions. She could not recall the terms of her contract with Appellant, was unfamiliar with the easement agreement with the City, and was confused as to how the individuals living with her became part owners of her property. Given her repeated confusion about all of the matters involved herein, Appellant's level of sophistication and experience, and Appellant's complete lack of investigation, this Court finds that under the facts presented, Appellant was not justified in relying upon Appellee's alleged assertions.
 {¶ 24} Assuming arguendo that Appellant's reliance was justifiable, its claim still must fail. The parol evidence rule states that "[i]f contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, then evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to terms of the final agreement are generally excluded from consideration by the court." Oser v. First Nat.Bank of Ohio (November 15, 1995), 9th Dist. No. 17184, at *2. As noted above, the parties' option purchase agreement was a fully integrated contract. However, "the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." Galmish v.Cicchini (2000), 90 Ohio St.3d 22, 28. In the instant matter, Appellant has not pursued a fraudulent inducement claim. Further, as Appellee never made any promise that any action would actually occur, i.e., Appellee never promised that the roadway would be removed, such a claim is not supported by the facts. The contract Appellant drafted did not seek to incorporate any of the provisions of Appellee's alleged contract with the City, nor did it seek to include removal of the roadway as a term of the parties' agreement. Assuming that Appellee represented that she had a contract with the City, the parties' integrated agreement did not reference that contract in any manner. The parol evidence rule, therefore, would serve to bar introduction of Appellee's alleged prior representations regarding the existence of a contract with the City.
 {¶ 25} Accordingly, Appellant's sole assignment of error lacks merit.
 III {¶ 26} Appellant's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Carr, J. concur.