[Cite as *Dollar Bank Leasing Co. v. Elms Country Club*, 2013-Ohio-2974.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| DOLLAR BANK LEASING CO. | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2012 CA 00202 |
| ELMS COUNTRY CLUB | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Case No.  2004 CV 03858


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      July 8, 2013


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

ERIC T. DEIGHTON                      JACOB T. WILL
PHYLLIS ULRICH                        116 Cleveland Avenue NW
CARLISLE, MCNELLIE, RINI              Suite 808
KRAMER & ULRICH                       Canton, Ohio  44702
24755 Chagrin Blvd., Suite 200
Cleveland, Ohio  44112

*Wise, P. J.*

{¶1}   Appellant Elms Country Club appeals the October 12, 2012, decision of the Stark County Common Pleas Court granting summary judgment in favor of Appellee Dollar Bank Leasing Corp.

### STATEMENT OF THE FACTS AND CASE

{¶2}   On February 14, 2004, Appellant Elms Country Club (Elms) and Appellee Dollar Bank Leasing Corp. (Dollar Bank) entered into a commercial lease agreement in which the vendor, Royal Links USA, Inc. (Royal Links), provided Elms with a piece of equipment called a Beverage Caddy Express Cart

{¶3}   Elms entered into the agreement after conversations with a representative from Royal Links.  Elms never spoke to a representative from Dollar Bank regarding same. Elms understood the lease to be a "zero-net lease," and that Royal Links would pay Elms the amount of the monthly lease payments for the equipment, which Elms would then pay to Dollar Bank.

{¶4}   The lease agreement listed the value of the total equipment cost as $13,625.76.  The obligation of Elms to Dollar Bank was 60 payments at $331.51 each.

{¶5}   In October of 2004, Royal Links stopped making payments to Elms.

{¶6}   The only payments received by Dollar Bank from Elms were four checks each in the amount of $331.51.

{¶7}   As of October 28, 2004, there remains due and owing on the commercial lease agreement the sum of $13,692.38 plus interest thereafter at the rate of $4.61 per diem.

{¶8} Elms retained the Beverage Caddy Express, and still has possession of same at this time. Dollar Bank has never attempted to repossess the cart.

{¶9} On November 15, 2004, Dollar Bank Leasing Corp. filed a Complaint against Elms Country Club for breach of contract.

{¶10} On May 25, 2005, Elms filed a third-party complaint against Royal Links USA.

{¶11} In August, 2005, this matter was stayed pending a bankruptcy action that was filed by Royal Links USA.

{¶12} Also in August of 2005, the trial court denied Dollar Bank's first motion for summary judgment.

{¶13} The case was stayed until approximately February of 2012, when the Dollar Bank activated the case after Royal Links USA dissolved through the bankruptcy action.

{¶14} After discovery, depositions, and mediation, Dollar Bank filed a second motion for summary judgment.

{¶15} On October 12, 2012, after a response by Elms, the trial court granted Dollar Bank's motion for summary judgment.

{¶16} Appellant Elms Country Club now assigns the following error for review:

### ASSIGNMENT OF ERROR

{¶17} "I. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, AS A GENUINE ISSUE OF MATERIAL FACT EXISTED."

**I.**

{¶18} In its sole Assignment of Error, Appellant assigns error to the trial court's summary judgment ruling.

{¶19} Civ.R. 56(C) provides, in pertinent part: " * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *."

{¶20} As an appellate court reviewing summary judgment issues, we must stand in the shoes of the trial court and conduct our review on the same standard and evidence as the trial court. *Porter v. Ward,* Richland App. No. 07 CA 33, 2007-Ohio-5301, citing *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the

nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280. A fact is material when it affects the outcome of the suit under the applicable substantive law. *See Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304.

{¶21} Appellant herein argues that summary judgment was not proper in this case because Appellee failed to mitigate damages and further because it was fraudulently induced into executing the lease agreement by Royal Links, which they argue was an agent of Dollar Bank Leasing Co.

{¶22} Appellant herein argues that it "was under the impression and belief that Appellee and Royal Links were acting in concert, and that Royal Links was an agent of Appellee." (Appellant's Brief at 9).

<u>Agency Relationship</u>

{¶23} In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. *Master Consol. Corp. v. BancOhio Natl. Bank,* 61 Ohio St.3d 570, 575 N.E.2d 817, syllabus (1991).

{¶24} Upon review, we find Appellant has failed to provide any evidence in support of its agency/apparent authority claims. Appellant admits that it never had any

contact with Appellee. Instead, it argues that it believed an agency relationship existed because Appellee "knowingly permitted Royal Links to provide the contract to Appellant". (Appellant's Brief at 10). Appellant offers no evidence that Appellee held Royal Links out to the public as possessing authority to bind it or that it clothed Royal Links with the appearance of authority. We therefore find Appellants have failed to meet the first prong as set forth above.

{¶25} Further, a review of the commercial lease agreement in this case does not support Appellant's position. The lease clearly delineates Elms as the Lessee, Royal Links as the Vendor and Dollar Bank as the Lessor. Further, the lease contains the following language in an "Exclusion of Warranties" clause:

{¶26} "Lessee [Elms] acknowledges that Lessee [Elms] has selected the Equipment without the advice or assistance of Lessor [Dollar Bank] and that Lessor [Dollar Bank] has made no representations or warranties of any kind or nature, directly or indirectly, express or implied, in connection with the Equipment, its durability, quality, condition, or suitability for Lessee's [Elms] purposes."

{¶27} The "Exclusion of Warranties" clause also states:

{¶28} "No representations or warranties made by the Vendor [Royal Links] or others with respect to the Equipment shall be binding on Lessor [Dollar Bank], nor shall any breach thereof relieve Lessee [Elms] from any of Lessee's [Elms] obligations here under."

{¶29} Based on the unambiguous terms of the Lease Agreement, Appellee is not responsible for any alleged misrepresentation of the value of the Equipment by

Royal Links, nor can any alleged false or fraudulent representations made by Royal Links be imputed to Dollar Bank.

Mitigation

**{¶30}** Appellant argues that Appellee failed to mitigate its damages in this case by failing to repossess the beverage caddy cart and further that the beverage caddy cart was over-valued.

**{¶31}** As a general rule, "an injured party has a duty to mitigate and may not recover for damages that could reasonably have been avoided." *Chicago Title Ins. Co. v. Huntington Natl. Bank,* 87 Ohio St.3d 270, 276, 719 N.E.2d 955, 1999–Ohio–62, citing *S & D Mechanical Constrs. Inc. v. Enting Water Conditioning Syst. Inc.,* 71 Ohio App.3d 228, 593 N.E.2d 354 (2nd Dist.1991). However, the obligation to mitigate is not unlimited; the party is not expected to incur extraordinary expenses or to do what is unreasonable or impracticable. *Id.; Lucky Discount Lumber Co., v. Machine Tools of Am.,* 181 Ohio App.3d 64, 2009–Ohio–543, ¶ 12 (2nd Dist.). In mitigating damages, an injured party must use only ordinary and reasonable effort to avoid or lesson the damages. *Abroms v. Synergy Bldg. Sys.,* 2nd Dist. No. 23944, 2011–Ohio–2180, ¶ 58. A defendant will not be held responsible for those damages that plaintiff could have avoided with "reasonable effort" and "without undue risk or expense." *Hartz Plaza Partners v. N.R. Dayton Mall, Inc.,* 12th Dist. No. CA89–11–066 (July 16, 1990).

**{¶32}** In this case, a substantial portion of the value of beverage caddy cart resided in the advertising and the "present and future attachments, accessories, exchanges, accessions, accounts, general intangibles" and $2,000 worth of retail goods to stock the beverage caddy cart, all of which was provided by Royal Links. Appellee

had no way to mitigate damages for the loss of these types of goods and services, nor was in the business to engage in such type of activity. Further, Appellee only provided the financing in this case. It did not set the value of the beverage caddy cart.

{¶33} As to Appellant's argument that the amount of interest is inequitable, this Court finds that Appellee was not responsible for the seven (7) year delay during which time the interest accrued on the lease. It was Appellant that brought Royal Links into this action on a third party complaint, not Appellee. Further, Appellant cites no authority for interest to toll in this matter.

{¶34} Appellants' sole Assignment of Error is overruled.

{¶35} For the foregoing reasons, the judgment of the Common Pleas Court, Stark County, Ohio, is affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

_____

_____

_____

                                                JUDGES

JWW/d 0625

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

DOLLAR BANK LEASING CO.   :
              :
  Plaintiff-Appellee     :
              :
-vs-           :     JUDGMENT ENTRY
              :
ELMS COUNTRY CLUB    :
              :
  Defendant-Appellant   :     Case No. 2012 CA 00202

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed to Appellant.

_____

_____

_____

          JUDGES